UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Jessica Ann McKee,                                                    Civil No. 23-1684 (DWF/ECW)

          Plaintiff,

v.
                                               MEMORANDUM
Jessica J. Brady, *in her individual as well*      OPINION AND ORDER
*as her official capacity as a nurse at the*
*Steele County Detention Center*, and Steele
County, Minnesota,

          Defendants.

**INTRODUCTION**

This matter is before the Court on Defendants Jessica J. Brady[1] and Steele County's (collectively, "Defendants") motion for summary judgment. (Doc. No. 31.) Plaintiff Jessica Ann McKee opposes the motion. (Doc. No. 37.) For the reasons set forth below, the Court grants in part and denies in part the motion.

**BACKGROUND**

In September 2019, Plaintiff Jessica Ann McKee was booked into the Steele County Detention Center ("SCDC"). (*See* Doc. No. 35 ("Buttera Decl.") ¶ 3, Ex. 2.) Upon booking, McKee submitted a medical questionnaire listing no prescription medications and no current physician. (*Id.* ¶ 2, Ex. 1.) Further, her medical booking

---

[1]     While Defendant Brady's married name is Jessica Weegman, the parties each refer to her as Brady, so the Court will follow suit. (*See* Doc. No. 33 at 3 n.1.)

sheet, which McKee signed, listed no medical issues, no medications, no personal doctor, and no need for special diet. (*Id.* ¶ 3, Ex. 2.) McKee did not report that she had been diagnosed with Crohn's disease and was prescribed sulfasalazine and prednisone to manage the disease, presumably because she had been in remission for approximately three years and had not been taking her medication. (Doc. No. 34 ("Ramstad Decl.") ¶ 2, Ex. 1 ("McKee Dep.") at 11-15, 17, 19.)

During her stay at SCDC, McKee communicated with the medical team, namely Defendant Nurse Jessica Brady, various times. First, McKee underwent the health appraisal that medical does of each detainee upon booking. (*See* Ramstad Decl. ¶ 3, Ex. 2 ("Brady Dep.") at 18.) Next, she was seen by the medical team for rib and elbow pain on September 26, 2019. (Buttera Decl. ¶ 5, Ex. 4.) Third, she sent a kite (an electronic message from the SCDC's internal messaging system) to medical requesting a flu shot on October 29, 2019, and received the vaccine the following day. (*Id.* ¶¶ 6-7, Exs. 5-6.)

On November 20, 2019, McKee mentioned her Crohn's disease to the medical staff for the first time. (*Id.* ¶ 4, Ex. 3, at 2.) McKee sent a kite to medical inquiring if she could be assigned to a lower bunk because of seizures, which she attributed to malnutrition due to her Crohn's and the diet at SCDC. (*Id.*) Medical replied two days later noting that McKee's medical record was reviewed and that there was no history of seizures, and therefore denying the requested bunk restriction. (*Id.*)

McKee again brought Crohn's to the attention of the medical staff on December 8, 2019. (*Id.* ¶ 8, Ex. 7, at 2.) She informed medical that her Crohn's was "acting up" and

2

had "gotten significantly worse" over the past few weeks. (*Id.*) McKee noted that she was experiencing "blood loss" which was making her lightheaded. (*Id.*) She requested a vegetarian diet to attempt to mitigate these symptoms. (*Id.*) Medical replied on December 10th, approving the vegetarian diet. (*Id.*) Unfortunately, the diet change did not have the desired effect. On December 16, 2019, McKee informed medical that the diet "seem[ed] to have made the bleeding worse" and requested that her diet be changed back. (*Id.* ¶ 10, Ex. 9.) In that message, McKee also inquired if the medical staff could get her sulfasalazine prescription to treat her Crohn's. (*Id.*) Medical agreed to change McKee's diet back and asked for McKee's provider to obtain medical records. (*Id.*) Medical also asked if McKee had anyone who could bring the medication in to speed up the process. (*Id.*) McKee informed medical staff that she saw Mayo Clinic (*id.* ¶ 12, Ex. 11) and Brady faxed a request to Mayo Clinic for records related to McKee's Crohn's that same day (*id.* ¶ 13, Ex. 12).

On December 18th, McKee sent another kite mentioning her Crohn's symptoms. (*Id.* ¶ 14, Ex. 13.) She resubmitted her request for a lower bunk assignment, noting that her Crohn's caused her to use the bathroom more often and that it was painful to make the climb to the top bunk due to another condition. (*Id.*) Medical replied the next day, instructing McKee to schedule an appointment with the medical staff if she would like to be evaluated for lower bunk criteria. (*Id.*) McKee never made such an appointment. (*See* Brady Dep. at 45.)

Mayo Clinic faxed McKee's medical records on December 19th. (*Id.* ¶ 15, Ex. 14.) The Mayo records showed three current medications for Crohn's, including

3

sulfasalazine, but none had refills remaining. (*Id.*) Because McKee would need a prescription with refills in order to get the medication, Brady could not dispense the medication to McKee. Brady instead sent McKee's records on to Advanced Correctional Healthcare ("ACH"), SCDC's physicians, the only ones who could write a new prescription. (Brady Dep. at 13.) An ACH physician never ordered the medications. (*Id.* at 37.) While the actual prescribing was out of Brady's hands, she could have gone to the Jail Administrator for a disagreement with ACH decision-making. (Ramstad Decl. ¶ 4, Ex. 3, at 18.)

On January 9, 2020, McKee wrote to medical noting that her Crohn's was continuing to get worse and following-up on the medication which she had not received. (Buttera Decl. ¶ 16, Ex. 15.) McKee also asked for a nutritional boost to help her stay hydrated. (*Id.*) On the morning of January 10th, Brady sent a correctional officer to wake up McKee and bring her to medical. (*See* McKee Dep. at 35.) McKee told Brady that she was "thirsty all the time," experiencing temperature fluctuations, and was having stabbing pains that felt like getting hit in the stomach with a bat. (Doc. No. 38 ("French Decl.") ¶ 3, Ex. B.) Brady contacted an ACH physician and arranged for transportation to the emergency room to treat these severe symptoms. (*Id.*; *see also id.* ¶ 4, Ex. C.) This was the first time McKee and Brady discussed McKee's Crohn's in person. (McKee Dep. at 27-28.)

McKee was taken to Mayo Clinic via ambulance. (French Decl. ¶ 3, Ex. B.) She received a blood transfusion due to anemia. (*Id.* ¶ 12, Ex. J.) McKee underwent a

colonoscopy from which she developed sepsis and was sent to the intensive care unit. (*Id.*)  McKee was discharged after ten days, on January 20th.  (*Id.*)

McKee subsequently filed the current action.  (Doc. No. 1.)  McKee alleges that Defendants were willfully indifferent to her medical needs, constituting cruel and unusual punishment in violation of the Eighth Amendment.  (*Id.* ¶ 22.)  She further alleges that Steele County has a practice and custom of failing to provide adequate medical care and treatment to pretrial detainees.  (*Id.* ¶ 23.)  McKee also alleges that Defendants' failure to provide adequate medical care was objectively unreasonable and constitutes a violation of the Fourteenth Amendment.  (*Id.* ¶ 25.)  Defendants now move for summary judgment (Doc. No. 31) and ask that the Court dismiss McKee's claims in their entirety and award Defendants costs and disbursements (Doc. No. 33 at 22).

## DISCUSSION

### I.  Legal Standard

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party.  *Enter. Bank v. Magna Bank of Mo.*, 92 F.3d 743, 747 (8th Cir. 1996).  However, as the Supreme Court has stated, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'"  *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Enter. Bank*, 92 F.3d at 747. The nonmoving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial. *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995). "[A] genuine issue of material fact exists if: (1) there is a dispute of fact; (2) the disputed fact is material to the outcome of the case; and (3) the dispute is genuine, that is, a reasonable jury could return a verdict for either party." *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.*, 49 F.3d 399, 401 (8th Cir. 1995). A party opposing a properly supported motion for summary judgment "may not rest upon mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986) (alteration in original) (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288 (1968)).

**II.     Eighth Amendment Claim**

As a preliminary matter, the Court dismisses McKee's Eighth Amendment claim because her rights are properly and fully vindicated under the Fourteenth Amendment. A claim for failure to provide adequate medical care is analyzed using the same framework for both the Eighth and Fourteenth Amendments. *See, e.g.*, *Walton v. Dawson*, 752 F.3d 1109, 1117-19 (8th Cir. 2014) (describing the analytical frameworks under both the Eighth and Fourteenth Amendments and noting that pretrial detainees' claims are analyzed under the Fourteenth); *Erickson v. Pope County*, No. 19-cv-3061, 2022 WL 17411091, at *17 (D. Minn. May 6, 2022) ("[Inadequate medical care] claims brought by

6

detainees prior to an adjudication of guilt are analyzed under the Fourteenth Amendment's Due Process Clause."). Because McKee's rights will be fully considered under the Fourteenth Amendment analysis, the Court dismisses the Eighth Amendment claim. *See Nur v. Olmsted County*, 563 F. Supp. 3d 946, 954 (D. Minn. 2021) (granting a motion for summary judgment as to an Eighth Amendment claim and denying as to a Fourteenth Amendment claim).

### III.    Fourteenth Amendment Claim Against Brady

Brady claims she is entitled to qualified immunity as a government official. The doctrine of qualified immunity protects state actors from civil liability when their "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The defense "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). To overcome the defense of qualified immunity on summary judgment, a plaintiff must show: "(1) the facts, viewed in the light most favorable to the plaintiff, demonstrate the deprivation of a constitutional or statutory right; and (2) the right was clearly established at the time of the deprivation." *Howard v. Kan. City Police Dep't*, 570 F.3d 984, 988 (8th Cir. 2009). The Court has discretion to decide which qualified immunity prong to consider first. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

As a pretrial detainee, McKee had a clearly established right to adequate medical care. *Ryan v. Armstrong*, 850 F.3d 419, 427 (8th Cir. 2017). Brady does not dispute that clearly established right. The dispute here centers around whether that clearly established

7

right was violated.  The right to adequate medical care for pretrial detainees is violated when a government official acts with deliberate indifference.  *E.g.*, *Presson v. Reed*, 65 F.4th 357, 365-66 (8th Cir. 2023).  Deliberate indifference requires an (1) objectively serious medical need that the official was (2) subjectively aware of but deliberately disregarded.  *Id.* at 366.

An objectively serious medical need is one that has either been diagnosed by a physician as requiring treatment or is so obvious that even a layperson would recognize the necessity for a doctor's attention.  *Davis v. Buchanan County*, 11 F.4th 604, 623-24 (8th Cir. 2021).  Defendants admit that McKee was diagnosed with Crohn's disease by a qualified medical provider but argue that the diagnosis alone was not enough to put Brady on notice of an objectively serious medical need.  Defendants point to myriad facts surrounding lack of notice, such as the lack of medical issues reported at booking and McKee's period of remission prior to November 2019.  Defendants read into the serious medical need prong a requirement of knowledge that does not exist.  This prong asks simply whether plaintiff had a serious medical need; the further prong of deliberate indifference analysis asks about knowledge.  There is no debate that Plaintiff suffered from Crohn's disease, a serious medical condition.

Plaintiff must also show that Brady was subjectively aware of this serious medical need and that she deliberately disregarded it.  *Davis*, 11 F.4th at 624.  Deliberate disregard requires a showing of "a mental state akin to criminal recklessness"—"neither negligence nor gross negligence are sufficient."  *Ryan*, 850 F.3d at 425.  Failure to respond to a serious medical may constitute deliberate indifference.  *Dulany v. Carnahan*,

8

132 F.3d 1234, 1239 (8th Cir. 1997); *see also Johnson-El v. Schoemehl*, 878 F.2d 1043, 1055 (8th Cir. 1989) ("Delay in the provision of treatment or in providing examinations can violate inmates' rights when the inmates' ailments are medically serious or painful in nature."). Conversely, prison officials can be "found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer v. Brennan*, 511 U.S. 825, 844 (1994).

The Court finds that a reasonable jury could decide in favor of either party on this inquiry. In favor of McKee, McKee reported a Crohn's flare-up as early as November 20th and reported a bleeding issue as early as December 8th, but Brady did not offer an appointment until December 19th. Brady herself admitted that a bleeding issue would require immediate medical attention. (Brady Dep. at 39.) A reasonable jury could decide that knowledge of these symptoms that require immediate attention and a lack of affirmative action to address these issues did rise to the level of deliberate indifference. In favor of Brady, Brady testified that she did not subjectively know about the risk and responded to each explicit request from McKee. For example, when McKee requested a vegetarian diet, Brady contends that it was reasonable to follow McKee's treatment plan since she would know best how to deal with her flare-ups. A reasonable jury could decide that responding to each of McKee's messages was enough action to show that Brady was not deliberately indifferent.

Viewing evidence in the light most favorable to plaintiff, there is a potential violation of constitutional right to adequate medical care. However, the Court cautions McKee that success at this stage of pleading does not guarantee success at trial. Because

9

the evidence is not such that a reasonable jury could only decide one way, Brady has not met her burden for qualified immunity. The Court therefore denies Brady's motion for summary judgment on the Fourteenth Amendment claim.

### IV.     Fourteenth Amendment Claim Against Steele County

McKee also brings the Fourteenth Amendment claim against the county. A municipality may be held liable under § 1983 if it, under color of law, subjects a person to deprivation of any right. 42 U.S.C. § 1983; *see Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690-91 (1978). Municipal liability exists "only where the municipality *itself* causes the constitutional violation." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989). Municipalities "are not vicariously liable under § 1983 for their employees' actions." *Connick v. Thompson*, 563 U.S. 51, 60 (2011). "[L]iability for a constitutional violation attaches only if the violation resulted from an official municipal policy, an unofficial custom, or a deliberately indifferent failure to train or supervise an official or employee." *Tirado v. City of Minneapolis*, 521 F. Supp. 3d 833, 840 (D. Minn. 2021).

McKee contends that the violation stemmed from an unofficial custom. (Doc. No. 1 ¶ 23). To support a claim of an unconstitutional unofficial custom, a plaintiff must establish a pattern of persistent and widespread unconstitutional practices. *See Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 404 (1997). An isolated incident of misconduct cannot, as a matter of law, establish a custom creating municipal liability under § 1983. *Ulrich v. Pope County*, 715 F.3d 1054, 1061 (8th Cir. 2013). Defendants argue that there was not a pattern of failure, nor even a failure in this circumstance.

10

McKee failed to respond to this argument. (*See generally* Doc. No. 37.) The "failure to oppose a basis for summary judgment constitutes waiver of that argument," because the nonmoving party is responsible for demonstrating any genuine dispute of material fact that would preclude summary judgment. *Satcher v. Univ. of Ark. at Pine Bluff Bd. of Trs.*, 558 F.3d 731, 735 (8th Cir. 2009). McKee's claim is therefore waived.

Even if McKee had defended her position, her claim would fail. McKee makes the conclusory statement that "Steele has a practice and custom of failing to provide adequate medical care and treatment to pretrial detainees." (Doc. No. 1 ¶ 23.) However, McKee fails to point to any facts in the record that would support such a claim. The entirety of her complaint centers around the lack of medical care for her Crohn's disease between September 2019 and January 2020. As noted, an isolated incident is insufficient to establish a custom. *Ulrich*, 715 F.3d at 1061. McKee failed to point to facts that would show a custom of failure to provide adequate medical care, so her claims must be dismissed.

## CONCLUSION

McKee's Eighth Amendment claim is dismissed because her constitutional right to adequate medical care as a pretrial detainee is properly analyzed under the Fourteenth Amendment. Her claim against Brady survives summary judgment because McKee has presented facts sufficient to create a genuine dispute as to whether Brady was deliberately indifferent. Her claim against Steele County is dismissed for failure to oppose a basis for summary judgment, or, alternatively, for a failure to demonstrate the existence of a genuine issue of fact.

**ORDER**

Based upon the foregoing and the record in this case, **IT IS HEREBY ORDERED** that:

1. Defendants Jessica J. Brady and Steele County's motion for summary judgment (Doc. No. [31]) is **GRANTED IN PART AND DENIED IN PART** as follows:

    a. The motion as to Plaintiff's Eighth Amendment claim is **GRANTED**.

    b. The motion as to Plaintiff's Fourteenth Amendment claim against Defendant Brady is **DENIED**.

    c. The motion as to Plaintiff's Fourteenth Amendment claim against Defendant Steele County is **GRANTED**.

2. Plaintiff Jessica Ann McKee's Eighth Amendment claim as to both parties and Fourteenth Amendment claim against Steele County are **DISMISSED WITH PREJUDICE**.

3. Defendant Steele County, Minnesota, is **TERMINATED** as a party in this case.

4. Defendants' request for costs and disbursements along with their motion for summary judgment is **DENIED**.

Dated:  April 15, 2025                                s/Donovan W. Frank
                                                                    DONOVAN W. FRANK
                                                                    United States District Judge

12